UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil Case Number: _____

LECORA JONES, on behalf of herself and
all others similarly situated,

    Plaintiff,

vs.

SANTANDER CONSUMER USA, INC.,

    Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Lecora Jones, through the undersigned counsel, brings this action in her individual capacity and on behalf of the class of persons similarly situated as defined below and for her Complaint alleges, pursuant to her own knowledge, or where there is no personal knowledge, upon the investigation of counsel and/or upon information and belief, as follows:

## INTRODUCTION

1.  This action seeks to recover damages incurred as the result of a deceptive and fraudulent scheme conducted by Defendant, Santander Consumer USA, Inc. ("Santander") wherein Santander has a common business practice of taking title to vehicles that have been declared a total loss by an insurer and then reselling the "totaled" vehicles at auction without disclosing the salvage history or classification of the vehicle, and without "rebranding" the title as "salvage certificate title," as required by Florida Statutes section 319.30(3)(b).

2.  Florida Uniform Traffic Control Law, Fla. Stat. Ann. § 319.30(3)(b) states in relevant part:

> The owner or insurance company, as applicable, may not dispose of a vehicle or mobile home that is a total loss before it obtains a salvage certificate of title or certificate of destruction from the department.

3. The laws in other states are substantially similar in their prohibition on resale of 'salvage' vehicles without obtaining a salvage certificate of title for such vehicles first:

   a. *California*: "Prior to the sale or disposal of a total loss salvage vehicle, the owner, owner's agent, or salvage pool, shall obtain a properly endorsed salvage certificate and deliver it to the purchaser within 10 days after payment in full for the salvage vehicle […] ." Cal. Veh. Code § 11515(e);

   b. *Texas*: "A person […] who acquired ownership of a nonrepairable or salvage motor vehicle that has not been issued a […] salvage vehicle title, salvage record of title, or a comparable ownership document issued by another state or jurisdiction shall, before selling the motor vehicle, surrender the properly assigned title for the motor vehicle to the department and apply to the department for the appropriate ownership document." Tex. Transp. Code Ann. § 501.095(b);

   c. *New York*: "Whenever a person […] acquires ownership of a motor vehicle which has been […] disposed of as junk or salvage […], such person shall deliver a statement concerning such acquisition to the commissioner as provided in this section." N.Y. Veh. & Traf. Law § 429(c);

   d. *Illinois*: "An application for a salvage certificate shall be submitted to the Secretary of State in any of the following situations: (1) When an insurance company makes a payment of damages on a total loss claim for a vehicle […]." 625 Ill. Comp. Stat. Ann. 5/3-117.1(b); "Any person, firm or corporation, who shall knowingly […] sell […] or offer to […] sell […] the certificate of title to any motor vehicle which is a junk or salvage, or who shall fail to surrender the certificate of title to the Secretary of State as required under the provisions of this Section and Section 3-117.2, shall be guilty of Class 3 felony." 625 Ill. Comp. Stat. Ann. 5/3-116(c);

   e. *Pennsylvania*: "[A] person, including an insurer or self-insurer as defined in section 1702 (relating to definitions), who owns, possesses or transfers a vehicle located or registered in this Commonwealth which

      qualifies as a salvage vehicle shall make application to the department for a certificate of salvage for that vehicle." 75 Pa. Cons. Stat. Ann. § 1161(a).

4. Defendant, in its capacity as an automobile loan lender, took title to the vehicles for purchase of which it provided financing to consumers.

5. Once such vehicles were declared a "loss" by an insurance company, Defendant sold the vehicles without obtaining a salvage certificate of title first.

6. Defendant's cover up of the vehicles' 'salvage' history caused unsuspecting consumers to overpay substantial sums of money for vehicles which, because of their undisclosed 'salvage' history, were worth in fact less.

7. Plaintiff, on her own behalf and on behalf of those similarly situated, seeks to enjoin the practices complained of herein and asks that the Court order the Defendant to refund to all Class members, including Plaintiff, money overpaid in connection with Defendant's failure to report the vehicles as 'salvage.'

## JURISDICTION

8. The federal jurisdiction exists pursuant to 28 U.S.C. § 1332(d) as the amount in controversy exceeds the sum of $5,000,000, the number of class members exceeds one hundred (100) individuals, and any member of a class of plaintiffs is a citizen of a State and Defendant is a citizen of a foreign State.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that the Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

## PARTIES

10.  The Plaintiff, Lecora Jones ("Plaintiff"), is an adult individual residing in Conyers, Georgia.

11.  Defendant Santander Consumer USA, Inc., is a Texas business entity headquartered in Dallas, Texas.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

12.  On August 23, 2013, Defendant Santander became the lienholder on a used blue 2009 Ford Fusion Serial Number 3FAHP07ZX9R198981, hereinafter referred to as the subject vehicle, when Florida resident Michael Alphonso Yacobellis obtained financing from the Defendant to purchase the subject vehicle from Advantage Ford of Stuart, Inc. located at 4000 SE Federal Highway, Stuart, Florida 34997.

13.  On September 9, 2013, Michael Alphonso Yacobellis applied for Certificate of Title from the State of Florida after purchasing the subject vehicle utilizing the financing services of the Defendant. Application for Certificate of Title reflecting same is annexed hereto as **Exhibit A.**

14.  On January 31, 2014, the insurance company declared the subject vehicle a 'total loss' as a result of collision damage. AutoCheck and CarFax reports reflecting the same are annexed hereto as **Exhibit B and Exhibit C respectively**.

15.  On July 2, 2014, the State of Florida issued a duplicate Certificate of Title. Certificate of Title reflecting such date of issue is annexed hereto as **Exhibit D**.

16.  The newly issued Certificate of Title failed to reflect that subject vehicle is 'salvage.'

17. On July 14, 2014, Defendant, Santander, placed the subject vehicle into the stream of commerce when Defendant sold the vehicle and transferred the Vehicle's title to Consumers Choice Automotive Group located at 1706 Lower Roswell Road, Marietta, Georgia, 30068. AutoCheck Reports, CarFax Reports, and Certificate of Title reflecting same are annexed hereto as **Exhibit B, Exhibit C,** and **Exhibit D** respectively**.**

18. Defendant made such a sale without obtaining a salvage certificate of title despite the fact that the subject vehicle had been reported as an insurance loss.

19. As the vehicle owner, Defendant failed to obtain salvage certificate of title before placing the subject vehicle into the stream of commerce, and before selling the subject vehicle to Consumers Choice Automotive Group.

20. On August 30, 2014, Plaintiff Lecora Jones purchased the subject vehicle. The contract executed between Plaintiff and Consumers Choice Automotive Group is annexed hereto as **Exhibit E.**

21. At the time of the purchase, Plaintiff Lecora Jones was unaware that the subject vehicle was worth less than what Plaintiff was led to believe due to the undisclosed 'salvage' history of the vehicle.

22. The contract between Plaintiff and Consumers Choice Automotive Group is void of any indication that the subject vehicle was a 'salvage' by way of its history.

23. At the time of the Vehicle's sale to the Plaintiff, the Vehicle odometer read 64,331 miles, the same mileage as at the time of the Vehicle's sale by Santander to Consumers Choice Automotive Group.

24. On or about March 26, 2015, Plaintiff decided to trade the Vehicle in and visited an automobile dealership for a quote.

25. The dealership pulled the Vehicle's AutoCheck Report and pointed out that the Vehicle had been reported by an insurance company as a "loss."

26. Therefore, due to the Vehicle being a 'salvage,' the dealership offered Plaintiff only nominal price, well below the Vehicle's market price if it had not been a 'salvage.'

27. Having learned the Vehicle was a 'salvage,' upon closer examination, Plaintiff observed signs of body work repair and paint overspray.

28. At the time the Vehicle had been rendered "loss" by the insurance company, the Vehicle was owned by Santander.

29. Santander failed to report the Vehicle as a "loss" and failed to obtain a salvage certificate of title before selling the Vehicle.

## CLASS ACTION ALLEGATIONS

### A. The Classes

30. Plaintiff brings this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated.

31. Plaintiff brings this action for herself and on behalf of a class of all similarly situated individuals. Plaintiff seeks to represent a nationwide class defined as:

> **All consumers who within the four years prior to the filing of this action purchased a vehicle in either Florida, California, Texas, New York, Illinois, or Pennsylvania, which has been deemed a loss by an insurance company when owned by Santander Consumer USA, Inc., and which Santander Consumer USA, Inc., sold without first obtaining salvage certificate of title.**

32. Excluded from the Class are Santander, the legal representatives, heirs, successors, and assigns of any excluded person, and members of the federal judiciary.

### B. <u>Numerosity</u>

33. As its regular business practice, Santander disposes of 'salvage' vehicles it owns without obtaining salvage certificates of title. Class members are believed to be so numerous that joinder of all members is impractical.

34. The exact numbers and identities of class members are unknown at this time and can only be ascertained through discovery. Identification of the class members is a matter capable of ministerial determination from Defendant's records.

35. Plaintiff reasonably believes that there are hundreds of consumers who are members of the class.

### C. <u>Common Questions of Law and Fact</u>

36. There are common questions of law and fact raised in this Complaint which predominate over any questions affecting only individual class members.

37. The following questions of law and fact common to the class members are ripe for determination and are raised herein:

    a. Whether Defendant violated Fla. Stat. Ann. § 319.30 by and failing to obtain a salvage certificate of title for vehicle it owned that were deemed a loss by an insurance company;

    b. Whether Defendant defrauded consumers by placing into a stream of commerce the "insurance loss" vehicles without obtaining a salvage certificate of title first;

    c. Whether Defendant engaged into such conduct willfully and knowingly.

### D. <u>Typicality</u>

38. Plaintiff's claims are typical of the claims of the class members, since each of the claims arises from consumers purchasing vehicles which have not been reported by Defendant as 'salvage.'

39. Plaintiff and the Class Members were subjected to the same kind of unlawful conduct and the claims of Plaintiff and Class Members are based on the same legal theories and questions of law and fact.

### E. Protecting the Interests of the Class Members

40. Plaintiff will fairly and adequately represent the interests of class members, all of whom are victims of Defendant's unlawful conduct.

41. Plaintiff's interests do not conflict with the interests of the Class, and the Plaintiff intends on prosecuting this action vigorously.

42. All of the class members' claims arise from the very course of conduct and specific activities complained of herein and require application of the same legal principles.

43. Plaintiff has retained counsel experienced in bringing class actions and consumer protection claims and who stands ready, willing and able to represent the classes.

### F. Proceeding Via Class Action is Superior and Advisable

44. A class action here is superior to other available methods for fair and efficient adjudication of the controversy.

45. Class action treatment will allow a large number of similarly situated individuals to simultaneously pursue their common claims in a single forum in an efficient manner, without unnecessary duplication of effort and expense that would be required if numerous individual actions were pursued.

46. Absent a class action, most members of the class would find the cost of litigating their claims to be prohibitive and, therefore, would have no effective remedy at law.

47. The members of the classes are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

48. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

49. Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant and other debt collectors. Conversely, adjudications with respect to individual class members would be dispositive of the interest of all other class members.

50. The amount of money at issue is such that proceeding by way of a class action is the only economical and sensible manner in which to vindicate the injuries sustained by Plaintiff and the other class members.

## COUNT I
## CONSUMER FRAUD

51. The Plaintiff incorporates by reference paragraphs 1-50 of this Complaint as though fully stated herein.

52. The foregoing acts and practices constitute fraud under the common law of the State of Florida.

53. The Defendant defrauded consumers by placing into a stream of commerce the insurance "loss" vehicles without obtaining a salvage certificate of title first.

54. Florida Uniform Traffic Control Law prohibits sale of a vehicle that has been deemed a "loss" by an insurance company without surrendering the vehicle title and obtaining a salvage certificate of title. Fla. Stat. Ann. § 319.30(3)(b).

55. Santander did not seek nor obtained a salvage certificate of title for the Vehicle which it sold and which had subsequently been purchased by the Plaintiff.

56. By placing into a stream of commerce the insurance "loss" vehicles without obtaining a salvage certificate of title first, Defendant deprived Plaintiff and members of the Class of benefit and protection that is mandated by the Florida legislature.

57. The conduct engaged in by the Defendant constitutes consumer fraud in that it qualifies as unfair or deceptive practices in the conduct of trade or commerce.

58. The Defendant's acts, practices and conduct were done willfully or knowingly.

59. Plaintiff and each and every member of the Class suffered an injury as a result of the Defendant's willfully deceptive acts and practices.

60. Plaintiff and the Class Members suffered actual damage as a result of the foregoing.

61. WHEREFORE, Plaintiff and each Class member is entitled to recovery of all sums paid in excess of the vehicles' actual value because of such vehicles being 'salvage,' all damages allowable by law, and reasonable attorneys' fees.

## COUNT II
## UNJUST ENRICHMENT

62. The Plaintiff incorporates by reference paragraphs 1-50 of this Complaint as though fully stated herein.

63. Plaintiff and Class Members conferred a benefit on Defendant through the payment of full purchase price to Defendant, despite Defendant's knowledge that the vehicle was in fact a salvage vehicle worth substantially less than Defendant fraudulently claimed.

64. Such conferred benefit allowed Defendant to enrich itself to the detriment of the Class.

65. Defendant appreciated, accepted, and retained this benefit, as it earned a profit by virtue of its deceptive business practice.

66.     Under the circumstances, it would be unjust and inequitable to allow the Defendant to retain this benefit, as it was obtained through deceptive and unfair representations and omissions.

67.     Plaintiff and Class Members have suffered damages as a result of Defendant's unjust enrichment.

68.     WHEREFORE, Plaintiff and each Class Member is entitled to recovery of all sums paid in excess of the vehicles' actual value because of such vehicles being 'salvage,' all damages allowable by law, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant and an Order providing for:

a. Certification of the Class pursuant to FED. R. CIV. P. 23, certifying Plaintiff as representative of the Class and designating her counsel of record as counsel for the Class;

b. Finding that Defendant has violated Florida Statutes section 319.30(3)(b);

c. Actual and compensatory damages;

d. Reasonable attorney fees and costs;

e. Pre-judgment interest as may be determined by statute and rule; and

f. Such other and further relief as the Court may deem necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury of all issues so triable.

Dated: January 15, 2016									Respectfully submitted,

*/s/ Seth M. Lehrman*
Seth M. Lehrman (Fla. Bar No. 132896)
E-mail: seth@pathtojustice.com
Mark F. Fistos (Fla. Bar No. 909191)
E-mail: mark@pathtojustice.com
Brittany N. Henderson (Fla. Bar No. 118247)
E-mail: brittany@pathtojustice.com
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 N. Andrews Ave., Suite 2
Fort Lauderdale, Florida 33301
Telephone:  (954) 524-2820
Facsimile:  (954) 524-2822

Sergei Lemberg *(seeking Pro Hac Vice admission)*
Email: slemberg@lemberglaw.com
Vlad Hirnyk *(seeking Pro Hac Vice admission)*
Email: vhirnyk@lemberglaw.com
LEMBERG LAW L.L.C.
1100 Summer Street, Third Floor
Stamford, CT 06905
Telephone: (203) 653-2250 ext. 5500

*Attorneys for Plaintiff*